Mahalo. May it please the court, Ellis Johnston on behalf of Marcus Unigwe, the defendant appellant in this case. I'll do my best to reserve a minute for rebuttal. This court has already ruled that Mr. Unigwe's case is not moot, but I want to argue today that the two sentencing errors by the district court were not harmless. They weren't harmless when the district judge sentenced Mr. Unigwe under the unfounded belief that he personally caused nearly a million dollars' worth of financial loss to fraud victims of a separate fraud, and it wasn't harmless when the district court sentenced Mr. Unigwe believing that he knew the proceeds he received were unlawful gains, or as the government continues to argue to this day, that he participated in the actual fraud conspiracy rather than the crime to which he pled. Guidelines matter. The district judge knew the guidelines mattered. In ER 42 during his original pronouncement of sentence, he said, quote, the sentence is a product of the guidelines together with the factors of 18 U.S.C. section 3553A. He also said that he was placing a particular emphasis on the avoidance of disparity. That's on ER 42. That's correct, Your Honor, and I do want to come back to that in a moment.  Importantly, the government says the court doesn't need to reach the merits of these issues because at a later date, the district court indicated relatively tersely that because the court fails to see an error in its application of the offender score adjustments, because even if it did, it would impose the same sentence based on nine guideline considerations, it was in that case denying bail. What this court requires, the very case cited by the government in Munoz, is more than simply saying that the court would impose the same sentence. What Munoz said is required is specifically an explanation, among other things, the reason for the extent of variance. That's why I want to come back to disparity now. What is it about those initial comments that would justify this sentence? Before I do that, when the district court was denying bail pending appeal, it was doing it where the argument was, not just the two arguments I'm raising here, but that Mr. Conway would be at an adjusted offense level resulting in a 10 to 16 month guideline range. The court was saying, I would impose 18 months whether your sentence was lower than that or your sentencing range was lower than that or higher than that. How does he do it? Disparity is the telling thing here. How do you do a disparity analysis unless you're able to figure out how similarly situated defendants are in the case? That's exactly what the problems are here. The merits of these sentencing issues are a district judge who believed that Mr. Unigwe personally caused loss and that he apparently was involved in the fraud conspiracy to which he didn't plead. What he did was operate an unlicensed money transmission business. I think that statement isn't sufficient under Munoz and it isn't sufficient even if we sit here and say, how could he get to that? How could he sentence the same person to the same sentence if he understood him to be doing an unlicensed business as opposed to being part of a conspiracy fraud where he's personally causing millions of dollars worth of damage? I think the first issue, whether he personally caused substantial financial hardship, is relatively straightforward if we just deal first with the government's misunderstanding of what Mr. Unigwe was found guilty of. He was found guilty of operating an unlawful money business. However, the only thing that the government has argued here on appeal is that he pled guilty to an inchoate crime conspiracy which required only his agreement to participate in the fraud scheme. Then it says because of his active participation in the fraud scheme, he caused substantial financial hardship. The government couldn't even say personally caused. This is a new guideline. This court has not published opinions on it. But personally causing substantial financial harm requires something more than receiving money that someone else has defrauded another. How are we supposed to think about this? Personally caused, I think, has to mean something different from caused. Otherwise, personally means nothing. How are we supposed to figure that out? Does that mean that anyone down a chain of I stole it, I give it to the fence. He's my fence. He's been my fence for 10 years. Without my fence, I probably wouldn't be doing this. Did the fence personally cause? How do I draw the line as to what's personally and not personally? Give me some help here. Judge Fletcher, by applying a but-for analysis that I think has been articulated in two out-of-circuit district court orders that I've cited extensively in my briefs. But the question is, but for your actions, was the person, did they lose substantial financial hardship? In this case, for this particular application of the guideline, the fence is not going to, is going to avail themselves of the minus two. But as you said, those are out-of-state district court decisions. We're looking at how we should apply this. So what you're suggesting is going to be in pretty serious tension with our case law that has to do with, if we go back to Judge Fletcher's question, about the downstream consequences. We have, as you know, wire fraud cases that talk about money laundering on the back end being part of the crime. Could you address that? Yeah. And let me just give you an example from the guidelines. This is a unique availability to people with zero points. So this is a guideline calculation that says personally caused. And if you look at the application note to subsection A6, it says that determining whether someone can avail themselves of this is determined separately from the considerations of 2B1.1. Now that's for people who engage in fraud and theft offenses. This is 2S, but I'd get too far into the weeds. I'm worried about your time because you're not answering the question. I'm sorry. But in that instance, you can get enhancements under the guidelines if the offense resulted in substantial financial hardship. And so here we have the guidelines saying that's not enough to be precluded from the zero point offender. You have to personally cause it. And this is not – this is barrage. These are cases, Supreme Court cases, that talk about what this causation requirement is. I cited Ninth Circuit cases that talk about causation. So I don't – I don't see how this upsets the plain language. I mean, that's where I begin – personally cause substantial financial hardship. Let's just take the simple facts of the case. These people were defrauded long before Mr. Unigwe saw a dollar there. That's the question I was trying to get you to answer two minutes ago. I'm very sorry. That's okay. You don't have to apologize. But I think it's what Judge Fletcher is getting at, too. And I think it's going to be of interest to the panel. Do you want to speak to it? Yes. Again, to personally cause substantial financial hardship – Counselor, the question had to do with our case law that recognizes that, as Judge Fletcher put it, you know, the fence. I've got this crime going, and the fence is my long-term fence. And we have – I give an example, which is wire fraud charges – or cases, right, where the person money laundering on the back end is viewed as part of the overall fraudulent scheme. That's what we're trying to get you to speak to. In recognizing that I'm short on time, I would love the opportunity to supplementally brief this. The government didn't cite a single case to which we're referring something little. It is our precedent that we're worried about, and so we're trying to figure out how to make a sense of this guideline that hasn't been interpreted. And I appreciate that. If you want to save your time for rebuttal, I don't want to take up any more of it. Thank you so much. May it please the Court, good morning. My name is Marvick DeVitt, and I represent the United States, the appellee in this case. This Court should not remand and vacate the sentence, because the district court in this case properly applied the sentencing enhancement and properly found the defendant ineligible as a zero-point offender. Now, counsel started his argument with harmless error, so let me start with that. Remand is not required because if the court should find any error occurred, and I'm not conceding that the district court erred. In fact, the government's position is that the district court properly applied the sentencing guidelines. There is harmless error in this case. Your Honor, counsel is pretty much arguing that the district court should have reduced the offense level to four levels, meaning find his client eligible as a zero-point offender, which is a minus two, and not have applied the knowledge and belief enhancement under the provision of 2S1.3. Well, if you look at the pre-sentence report, the probation officer found that, which the court adopted, which the government adopted, the probation officer found in the pre-sentence report, and I'm referring to page 17, paragraphs 29 to 36, in the pre-sentence report, the probation officer first found that there was a base offense level of six and an enhancement of plus 14, because the loss in this case, almost a million dollars, the corresponding increase is a plus 14. So, six plus 14 is 20, and with the addition of plus two and the recognition of acceptance of responsibility, the total offense level is 20. 20 corresponds, Your Honor, to, pardon me, 18, Your Honor, corresponds to a level of 27 to 33 months. Pardon me, 20 corresponds to a level of 33 to 41 months. And the court, in fact, imposed a below-guideline sentence of 18 months. So, even if the court were to apply the minus four level increase, that would reduce the level from level 20 to level 16. That wouldn't make it harmless error. Yes, Your Honor. That wouldn't make it harmless error. So, our general rule is that if a guideline calculation is, I know you know this, but if a guideline calculation is wrong, the general rule is that we can't tell what the judge would have done and we send it back. And that is generally what we do. Opposing counsel is arguing Munoz, because we don't always do that. Sometimes we can look at a record and see that the guideline calculation didn't make a difference. So, I think that's what you're intending to argue. And could you get to that point, please? Why is it that we should look at this record and decide that the judge wasn't basing the sentence on the guideline? Well, the judge said that in his sentencing. And the judge further clarified that when the parties litigated whether or not the defendant should be released pending appeal. But generally speaking, even if the judge says it doesn't make any difference, it's an unusual case that we don't remand. And I would submit, Your Honor, this is the case. And so, why is this an unusual case in the sense required? Because there's no prejudice in this case, Your Honor. Wait a minute. Under Munoz, the issue has to be whether we can tell whether the judge based the sentence on a guideline. Well, the judge did comment in the sentencing hearing that he adopted the pre-sentence report, found the guideline levels to be level 20, didn't follow the government's recommendation to impose a 41-month sentence, but instead departed downwards. And the judge had the discretion to do that because he looked at the other participants in this offense and found this particular defense and didn't want, and actually attached more weight to the factor of there being no disparity in the sentences among the participants. And before your time runs, let's assume for the moment that we actually get to the question and it's not harmless error. How do you address the interpretation of the guideline? What does personally caused mean? The judge did not clearly err in finding that. I'm asking you, how would you understand that term? Yes. In this particular case. Or rather, not you personally. How does the government argue that we should understand personally caused? The defendant's participation in the offense, whether it's a substantive offense, whether it's a conspiracy offense, whether it's an attempt offense. In this particular case, the defendant pled guilty to a conspiracy to operate. Well, I understand all that. The guideline is, did not personally cause substantial financial hardship. It's clear that there was substantial financial hardship. Did he personally cause it? Now let me ask it to you in a framework that maybe it'll help you respond in the way I'm interested in this. How far downstream do we go in terms of people who might participate in the proceeds of the crime? Did they all personally cause the financial hardship? Yes, Your Honor. Why? Because they were, it was their bank account that they used, that they knowingly used. This was the defendant's business account that was used to receive and further transfer almost a million dollars. What was in counsel's argument is that once the money was taken away from its owners, that the fraudulent scheme was completed? No, Your Honor. And that the downstream, that's what Judge Fletcher is speaking to, right? Whether you call it money laundering or the fence in his example, but that's not part of this. That's incorrect, Your Honor. Could you please explain what the government's position is on that point? In this particular case, the object of the conspiracy was to fraudulently obtain monies from victims. In this case, some of them were from Guam. And to further use money mules to transfer the money in separate accounts. I mean, including the defendant's account. And the ultimate object of the conspiracy was to transfer the money outside of the United States, where it would be more difficult for the government to try to repatriate the funds. In this case, the funds were transferred ultimately to Nigeria. I mean, this was a Nigerian advanced fee scheme. So I think it was a clear error on the part of the court below to recognize that this defendant personally caused substantial financial harm. I see. So your argument is not that personally caused has no limitation downstream. Your argument is, given the nature of what he did, the kind of fence that he was, putting the money in the end in Nigeria, where it's harder to get back, that caused the loss. So he had a contribution to it beyond merely being a sort of a conduit for money that goes somewhere. Yes, Your Honor. That's the argument. So that goes to the factual basis in the statement of facts, which uniquely conceded the government would be able to prove beyond a reasonable doubt. And that was that he was engaged in a conspiracy with others, known and unknown, to operate an unlicensed money-transmitting business, involving the transportation of funds that were derived from a criminal offense to wit an advanced fee inheritance scam conducted via the Internet that involved Guam-based victims. Yes, Your Honor. Is that any different than the but-for test that your friend on the other side is arguing? We apply to interpret this language? I don't believe it's any different from the but-for test. I do state in my brief that the appellant relied on out-of-district cases. I mean, I could say if it were not for Inigwe's participation, the bulk of the money would not have been transferred out of the United States to Nigeria. How important is it that he pled guilty to a conspiracy charge? It's very important, Your Honor, because under the law of conspiracy, co-conspirators are just as responsible for reasonably foreseeable harm in this case. I mean, that goes hand-in-hand with victims and losses. It also involves him entering into that conspiracy. As opposing counsel argued, he didn't plead guilty to money laundering. He pled guilty to operating this... Yes, Your Honor, but I think the object... ...this transaction business... The object remained the same. The object of the conspiracy remained the same. Yes, Your Honor. But I think he stipulated to it. But that's what we're trying to get at. Where does it end? I realize it's fact-specific, but the record supports the court's calculation. Thank you. I might have interrupted Judge Desai. I'm good, thank you. Thank you for your patience with our questions. We'll hear from opposing counsel. Thank you, Your Honor. I appreciate the court's concerns. I wish I was aware of the cases that this could potentially interfere with. But the attenuation that would be required to assume that Mr. Unigwe personally caused the loss is unfathomable to me. The government has gotten up here and made a new argument that, but for Mr. Unigwe's actions, these funds could have been returned if the government had discovered the fraud, because they might be... I don't think that's a new argument. I think she did argue that. And the problem we're trying to grapple with, and I don't think the briefing did tee it up this way, but it is in response to your premise, which is that the fraud was completed. I think that's your premise, isn't it? Before your client ever did what he did? I don't think I have to give you a hard and fast yes or no, because these people were defrauded of their funds. My question is, wasn't that your argument, that the crime was completed? Yes. On the facts that we have, it appears that these people undisputably lost their money and were defrauded by Sally Pareda and Ms. Roberto in Guam at a time and place unknown. Counsel, I'm just asking you, I don't think I asked it very well, apparently. I'm asking you whether your argument is that that was a completed fraud before your client became involved and did what he did on the back end. Isn't that your argument? And that's what I understood? I would say that's true, and even if it wasn't, for this particular guideline, he has to personally do something. Okay, so let me ask you then the question I asked opposing counsel, please. How important is it that he pled to a conspiracy charge? If it was what the government has been arguing below, up to here, that he was involved in a conspiracy to defraud others, everything. I would have an impossible time. He did not conspire to defraud others. Can you speak to the part of the plea agreement that I just read into the record? Yes, Your Honor, and I'll try to pull up the site. Well, it's the part that, it's the factual basis that he stipulated they could prove beyond a reasonable doubt that he engaged in this conspiracy involving transportation of funds and so forth. Involving transportation of funds from unlawful activity to whet a – To whet a – right. Right, right. An advance inheritance scam conducted via the Internet involving Guam-based victims. So if he entered into that conspiracy to do that, how do we say that the fraud was completed before the money ever got to him? Well, the government would have had to put more words in, and I am pretty sure that Mr. Yanigwe would not have pled guilty to this, because his conspiracy was to transmit funds through an unlicensed business. And there was a lot of – sorry, go ahead. I know we're taking you over time, but could you respond to the back and forth that I had with your adversary a moment ago in the sense of meaning of personally caused? I'll take it as a given for purposes of my question that sometimes way downstream, people who are engaged in the disposition of stolen assets do not personally cause the loss. Here, however, what your client did was facilitate the transfer of money to Nigeria so that there's enormous difficulty of getting it back. More difficulty than had he simply deposited it in some banks in Georgia. Let's just say the United States, the state of Georgia. Why has that not personally caused financial loss because of what he did? Not merely because he was downstream as part of the process, but because of what he did as a downstream actor. Judge Fletcher, I appreciate the question, but give me a hearing on this below. Like, did that indeed further the fraud or in some way prevent – these people gave their money up. The only argument the government has been able to make is that it would be harder for the government to recover that money if they had – once they've discovered the actual fraud. So to say that he has furthered the fraud to answer Judge Christen's question would require something more, some other fact, something that either was agreed to and can't be disputed or requires some sort of hearing below. I appreciate the hypothetical, but – It's a pathetic argument that these things were not fully developed below and maybe not fully developed in the briefing. I get that. But let's just – indulge me with the – I'm trying to understand what the personally caused would mean. And it doesn't require any special briefing to know the fact that what he did was he takes the money and he facilitates his transfer to Nigeria and it doesn't take any great record development to tell us that it's harder to get money back from Nigeria than from a bank in the United States or some resident in the United States. So I think he – if we're just talking facts, not yet law, but facts, what he did was make it harder to get the money back. Now did he then – here comes the language – did he personally cause substantial financial hardship when what he did made it harder to get the money back? Fair enough. Assuming those facts that I don't agree to or stipulate to today. Causation, as I've briefed from the Supreme Court and has been adopted by the Ninth Circuit, is there is a but-for analysis, approximate causation. But for Mr. Unigwe's actions, did those people suffer substantial financial hardship? That's how I'd read the personal – the personally caused. And but for his actions, the answer is no, unless we engage in a hypothetical and yet-to-be-developed understanding that those people would not have been deprived of their financial resources, but for him sending this to Nigeria. I know we can say the word Nigeria, and that brings to mind a whole bunch of things that make it sound impossible and scary to recover. I struggle with that. I appreciate the question. And I do take your point that the record is undeveloped on this point. But even if it was, even if that was an impossible – I'm sorry, you can stop me. You're spectacularly over your time. Do you have anything else that you wanted to tell us? No, Your Honor, other than this is just – this is an important case with Mr. Unigwe. Counsel? Yes. Do you have any additional questions? I think we're done. Thank you. We've got your argument. We'll take that case under advisement.
judges: FLETCHER, CHRISTEN, DESAI